**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division**

| | | |
|---|---|---|
| **LINDA SMITH,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | **Civil No. TMD 15-1106** |
| v. | * | |
| | * | |
| | * | |
| **NANCY A. BERRYHILL,** | * | |
| **Acting Commissioner of Social Security,** | * | |
| | * | |
| **Defendant.**[1] | * | |
| | ************ | |

**MEMORANDUM OPINION GRANTING DEFENDANT'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

Plaintiff Linda Smith seeks judicial review under 42 U.S.C. § 405(g) of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act. Before the Court are Plaintiff's Motion for Summary Judgment (ECF No. 10) and Defendant's Motion for Summary Judgment (ECF No. 15).[2]  Plaintiff contends that the administrative record does not contain substantial evidence to support the Commissioner's decision that she is not disabled. No hearing is necessary. L.R. 105.6. For the reasons that follow, Defendant's Motion

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. She is, therefore, substituted as Defendant in this matter. *See* 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

[2] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002). For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

for Summary Judgment (ECF No. 15) is **GRANTED**, Plaintiff's Motion for Summary Judgment (ECF No. 10) is **DENIED**, and the Commissioner's final decision is **AFFIRMED**.

# I

## Background

Plaintiff was born in 1958, has a college education, and previously worked as a trainer, administrative assistant, instructional designer, and personnel clerk. R. at 31-32, 233, 235, 237, 252. Plaintiff applied for DIB on January 19, 2012 (with a protective filing date of January 9, 2012), alleging disability beginning on October 28, 2011, due to fibromyalgia, insomnia, and lupus. R. at 19, 191-97, 235. The Commissioner denied Plaintiff's application initially and again on reconsideration, so Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). R. at 109-31, 134-43. On July 24, 2014, ALJ Jennifer M. Long held a hearing in Washington, D.C., at which Plaintiff and a vocational expert ("VE") testified. R. at 41-68. On September 3, 2014, the ALJ issued a decision finding Plaintiff not disabled from the alleged onset date of disability of October 28, 2011, through the date of the decision. R. at 14-40. Plaintiff sought review of this decision by the Appeals Council, which denied Plaintiff's request for review on January 14, 2015. R. at 5-9, 13, 333-37. The ALJ's decision thus became the final decision of the Commissioner. *See* 20 C.F.R. § 404.981; *see also Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 2083 (2000).

On April 17, 2015, Plaintiff filed a complaint in this Court seeking review of the Commissioner's decision. Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment. The case subsequently was reassigned to the undersigned. The parties have briefed the issues, and the matter is now fully submitted.

## II

## Summary of Evidence

**A.     State Agency Medical Consultants**

On June 26, 2012, a state agency medical consultant, A.R. Totoonchie, M.D., assessed Plaintiff's physical residual functional capacity ("RFC"). R. at 114-15. Dr. Totoonchie opined that Plaintiff could (1) lift and/or carry twenty pounds occasionally and ten pounds frequently; (2) stand and/or walk for a total of about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling. R. at 115. Plaintiff had no postural, manipulative, visual, communicative, or environmental limitations. R. at 115.

On December 3, 2012, another state agency consultant, Karen Sarpolis, M.D., again assessed Plaintiff's physical RFC. R. at 127-29. Dr. Sarpolis opined that Plaintiff could (1) lift and/or carry ten pounds occasionally and ten pounds frequently; (2) stand and/or walk for a total of about four hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling. R. at 128. Dr. Sarpolis opined that Plaintiff occasionally could climb, balance, stoop, kneel, crouch, and crawl. R. at 128. Plaintiff had no manipulative, visual, communicative, or environmental limitations. R. at 128-29.

On December 8, 2012, Dr. Tanveer A. Padder conducted a consultative examination of Plaintiff. R. at 31, 539-43. Dr. Padder noted Plaintiff's

> reported history of depression, anxiety, no prior psychiatric admission who has not been working since October 2011 and after she was diagnosed with fibromyalgia and other medical issues. She claimed that she tried to get back to work but she was not able to and she attributes her inability to work on her medical, as well as psychiatric symptoms, mostly on medical. She claims to be very tired all the time and not able to tolerate a lot of sensory stimuli along with chronic pain, anxiety. She has psychosomatic symptoms including headache and insomnia. As per mini mental, there were no gross cognitive deficits.

R. at 541. "Her attention/concentration was fair although she could not do serial 7's but was able to do serial 3's and able to spell the word world backwards." R. at 541. "Her mini-mental score was 27 out of 30." R. at 541. Dr. Padder's diagnoses included depression not otherwise specified, "[r]ule out anxiety/mood disorder secondary to medical problems." R. at 542. Dr. Padder also rated Plaintiff's GAF at 55. R. at 542.[3]

On December 19, 2012, a state agency consultant, Dawn Jackson, Psy.D., using the psychiatric review technique under 20 C.F.R. § 404.1520a, evaluated Plaintiff's mental impairments under Listings 12.04 and 12.06 relating to affective and anxiety-related disorders (R. at 125-27). *See* 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.04, 12.06. Among the opinions reviewed by Dr. Jackson was Dr. Padder's opinion from the December 2012 consultative examination and GAF rating of 55. R. at 126. Dr. Jackson opined that, under paragraph B of the applicable listings, Plaintiff's mental impairments caused her to experience (1) no restriction in activities of daily living; (2) mild difficulties in maintaining social functioning; (3) mild difficulties in maintaining concentration, persistence, or pace; and (4) no repeated episodes of decompensation of extended duration. R. at 126. Dr. Jackson did not find evidence to establish the presence of the criteria under paragraph C of the applicable listings. R. at 126. Dr. Jackson

---

[3] The GAF, or global assessment of functioning, scale rates psychological, social, and occupational functioning; it is divided into ten ranges of functioning. Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. text rev. 2000). A GAF rating between 51 and 60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). *Id.* at 34. The current edition of the manual eliminated the GAF scale for reasons including "its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice." Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 16 (5th ed. 2013).

ultimately found that "[t]here is no evidence of significant limitation in any [mental-health]-related functional area. [Plaintiff's mental-health] impairment is not severe." R. at 126.

**B.  Hearing Testimony**

    **1.  Plaintiff's Testimony**

The ALJ reviewed Plaintiff's testimony in her decision:

> [Plaintiff] testified that she stopped working full-time in December 2006, because she married and moved to England. After that, she only worked part-time on a military base in England. [Plaintiff] and her husband returned to the United States in late 2009. Thereafter, she worked part-time in the summer of 2011 and subsequently obtained a full-time job. However, she indicated that she was absent from this job too often due to fatigue, inability to concentrate and headaches. She stopped working in October 2011.
>
> She explained that she was diagnosed with lupus twenty-six years before the hearing, but she did not describe a progression of the illness. Rather, she said the condition had been inactive since 2007.
>
> [Plaintiff] was diagnosed with fibromyalgia in the spring of 2010. [Plaintiff] described fatigue on a daily basis and indicated she had to lie down and rest after being up for about four hours. [Plaintiff] said she had pain throughout her body and had to change positions frequently to [relieve] her body pain. She said she could only sit for twenty minutes to an hour. She also said she had trouble walking due to hip pain and trouble standing due to back pain, fatigue, and headaches. She napped four or five days per week. She described that she experienced pain in her arms and hands and dropped things.

R. at 27; *see* R. at 45-63.

    **2.  VE Testimony**

The VE testified that a hypothetical person with Plaintiff's same age, education, and work experience who had the RFC outlined in Part III below could perform Plaintiff's past work. R. at 67. The VE's testimony was consistent with the *Dictionary of Occupational Titles*.[4] R. at 67.

---

[4] "The Social Security Administration has taken administrative notice of the *Dictionary of Occupational Titles*, which is published by the Department of Labor and gives detailed physical

## III

## Summary of ALJ's Decision

On September 3, 2014, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the alleged onset date of disability of October 28, 2011; and (2) had an impairment or a combination of impairments considered to be "severe" on the basis of the requirements in the Code of Federal Regulations; but (3) did not have an impairment or a combination of impairments meeting or equaling one of the impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1; and (4) was able to perform her past relevant work as a trainer and personnel clerk. R. at 22-32. The ALJ thus found that she was not disabled from October 28, 2011, through the date of the decision. R. at 32.

The ALJ found that Plaintiff's fibromyalgia and lupus were severe impairments. R. at 22. The ALJ found, however, that Plaintiff's migraines, insomnia, depression, and anxiety were not severe impairments. R. at 22-25. In finding that Plaintiff's affective and anxiety-related disorders were not severe mental impairments, the ALJ found that Plaintiff experienced (1) no limitation in activities of daily living; (2) no limitation in social functioning; (3) mild limitation with regard to concentration, persistence, or pace; and (4) no episodes of decompensation of extended duration. R. at 24-25. The ALJ ultimately found that Plaintiff had the RFC "to

---

requirements for a variety of jobs." *Massachi v. Astrue*, 486 F.3d 1149, 1152 n.8 (9th Cir. 2007); *see Pearson v. Colvin*, 810 F.3d 204, 205 n.1 (4th Cir. 2015); *DeLoatche v. Heckler*, 715 F.2d 148, 151 n.2 (4th Cir. 1983); 20 C.F.R. § 404.1566(d)(1). "Information contained in the [*Dictionary of Occupational Titles*] is not conclusive evidence of the existence of jobs in the national economy; however, it can be used to establish a rebuttable presumption." *English v. Shalala*, 10 F.3d 1080, 1085 (4th Cir. 1993).

perform light work as defined in 20 CFR 404.1567(b) except with occasional postural limitations." R. at 26.[5]

The ALJ also considered Plaintiff's credibility and found that her "medically determinable impairments could reasonably be expected to cause symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." R. at 27. The ALJ gave greater weight to Dr. Totoonchie's opinion over Dr. Sarpolis's opinion because "[a]n assessment for light work is more consistent with [Plaintiff's] improvement during physical therapy, her full 5/5 motor strength in all extremities after several months in therapy, and her moderate activity level[.]" R. at 31 (citing R. at 407-89, 581-648). The ALJ also gave great weight to Dr. Jackson's opinion that Plaintiff's mental impairments were not severe because "[i]t is consistent with [Plaintiff's] lack of regular or formal mental health treatment, her inconsistent use of psychotropic medications, and the lack of clinical mental status findings or mental diagnoses in her medical records[.]" R. at 31 (citing R. at 546-74, 581-648).

IV

**Disability Determinations and Burden of Proof**

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R.

---

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). "Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.*

§§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-380 (2003). "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further." *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of production and proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).[6]

---

[6] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching,

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). RFC is a measurement of the most a claimant can do despite his or her limitations. *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

---

carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience. *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## V

## Substantial Evidence Standard

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Id.* The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.

*See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Hancock*, 667 F.3d at 472. Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

## VI

### Discussion

Plaintiff contends that the ALJ erroneously assessed her RFC contrary to Social Security Ruling[7] ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996). Pl.'s Mem. Supp. Mot. Summ. J. 3-7, ECF No. 10-1. Plaintiff maintains that the ALJ failed to perform properly a function-by-function assessment of her ability to perform the physical and mental demands of work. *Id.* at 5. In particular, she contends that the ALJ erroneously failed to include any limitations related to her depression, anxiety, migraine headaches, and fatigue in the ALJ's RFC assessment. *Id.* at 5-7.

---

[7] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. *Heckler v. Edwards*, 465 U.S. 870, 873 n.3, 104 S. Ct. 1532, 1534 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." *Pass*, 65 F.3d at 1204 n.3.

According to Plaintiff, substantial evidence thus does not support the ALJ's decision. For the reasons discussed below, Plaintiff's assertions are unavailing.

> SSR 96-8p explains how adjudicators should assess RFC and instructs that the RFC
>
> "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions" listed in the regulations. "Only after that may [residual functional capacity] be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." The Ruling further explains that the residual functional capacity "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."

*Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (alteration in original) (footnote omitted) (citations omitted). The Fourth Circuit has held, however, that a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis "is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" *Id.* (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)). Rather, remand may be appropriate "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (quoting *Cichocki*, 729 F.3d at 177). The court in *Mascio* concluded that remand was appropriate because it was "left to guess about how the ALJ arrived at his conclusions on [the claimant's] ability to perform relevant functions" because the ALJ had "said nothing about [the claimant's] ability to perform them for a full workday," despite conflicting evidence as to the claimant's RFC that the ALJ did not address. *Id.* at 637.

Plaintiff first contends that the ALJ erred in failing to include any limitation related to her depression and anxiety in the ALJ's RFC assessment, despite the findings from Dr. Padder's

consultative psychiatric evaluation of Plaintiff (R. at 539-43). Pl.'s Mem. Supp. Mot. Summ. J. 5, ECF No. 10-1. As noted above, an impairment is considered "severe" if it significantly limits the claimant's ability to work. *See* 20 C.F.R. § 404.1521(a). The claimant bears the burden of proving that his impairment is severe. *See Pass*, 65 F.3d at 1203. Here, the ALJ thoroughly considered Plaintiff's depression and anxiety at step two. R. at 24-26. The ALJ noted that Plaintiff demonstrated no limitation in activities of daily living and social functioning; only mild limitation in concentration, persistence, or pace; and no episodes of decompensation. R. at 25. The ALJ cited to evidence in the record to support her conclusions regarding the paragraph B criteria. R. at 25. The ALJ also clearly stated that, because Plaintiff's mental impairments caused no more than mild limitations in three of the four functional areas, her depression and anxiety were not severe. R. at 25. The ALJ thus fairly concluded that the impairments did not significantly limit Plaintiff's ability to perform basic work activities. R. at 22, 25. Further, in finding that Plaintiff's mental impairments were not severe, the ALJ gave great weight to the opinion of Dr. Jackson, who considered Dr. Padder's findings, including Plaintiff's GAF rating of 55 (R. at 31, 126). Thus, Plaintiff's contention that remand is warranted because the ALJ did not evaluate Plaintiff's GAF rating of 55 in her decision is unavailing. *See Bryant v. Colvin*, 571 F. App'x 186, 190 (4th Cir. 2014) (per curiam) (finding harmless error in ALJ's failure to discuss consultative examiner's report because report was discussed by state agency consultants, whose opinions were given "great weight" by ALJ, and was consistent with medical evidence on record); *Torres v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-15-3294, 2016 WL 5108022, at *3 (D. Md. Sept. 20, 2016).

Plaintiff next asserts that the ALJ erred in failing to include in the RFC assessment any limitation related to her migraine headaches and fatigue. Pl.'s Mem. Supp. Mot. Summ. J. 5-7,

ECF No. 10-1.  As Defendant points out, however, Plaintiff has not demonstrated that her migraine headaches and fatigue limited her to a greater extent than the ALJ found.  Def.'s Mem. Supp. Mot. Summ. J. 9-10, ECF No. 15-1.  Substantial evidence supports the ALJ's finding that medication was effective in treating Plaintiff's headaches.  R. at 492.  Even if there is other evidence that may support Plaintiff's position, the Court is not permitted to reweigh the evidence or to substitute its own judgment for that of the ALJ.  *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  In any event, because Plaintiff "has failed to point to *any* specific piece of evidence not considered by the Commissioner that might have changed the outcome of [her] disability claim," her argument in this regard thus is unavailing.  *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014).

Even if the ALJ had erred in her evaluation of Plaintiff's depression, anxiety, migraine headaches, and fatigue at step two, such error would be harmless.  Because Plaintiff made the threshold showing that her fibromyalgia and lupus constituted severe impairments, the ALJ continued with the sequential evaluation process and properly considered all of the impairments, both severe and non-severe, that significantly impacted Plaintiff's ability to work.  *See* 20 C.F.R. § 404.1523.  Any step-two error thus does not require remand.

Plaintiff finally maintains that remand is warranted because the ALJ failed to address the frequency and duration of her symptoms.  Pl.'s Mem. Supp. Mot. Summ. J. 7, ECF No. 10-1.  Plaintiff's argument is without merit, however (*see* R. at 26-30), and she again fails to point to any evidence not considered by the ALJ that would have changed the administrative result.  *See Reid*, 769 F.3d at 865.

In sum, substantial evidence supports the decision of the ALJ, who applied the correct legal standards here.  Thus, Defendant's Motion for Summary Judgment is **GRANTED**,

Plaintiff's Motion for Summary Judgment is **DENIED**, and the Commissioner's final decision is **AFFIRMED**.

## VII

### Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 15) is **GRANTED**. Plaintiff's Motion for Summary Judgment (ECF No. 10) is **DENIED**. The Commissioner's final decision is **AFFIRMED**. A separate order shall issue.

Date: March 8, 2017                                                /s/
                                                                   Thomas M. DiGirolamo
                                                                   United States Magistrate Judge